2005-NMSC-014

113 P.3d 340

**In the Matter of Christopher S. KEY, Esq.**

**An Attorney Licensed to Practice Before the Courts of the State of New Mexico.**

**No. 29,089.**

Supreme Court of New Mexico.

June 1, 2005.

As Corrected June 14, 2005.

518

Virginia L. Ferrara, Chief Disciplinary Counsel, Albuquerque, NM, for Disciplinary Board.

Charles W. Daniels, Albuquerque, NM, for Respondent.

## OPINION

PER CURIAM.

{1} This matter came before the Court following disciplinary proceedings conducted pursuant to the Rules Governing Discipline, Rules 17–101 through 17–316 NMRA 2003, wherein attorney Christopher S. Key admitted to having been convicted by way of a plea of guilty in the United States District Court for the District of New Mexico of the crime of making and subscribing a false tax return in violation of 26 U.S.C. § 7206(1) (2000) and 18 U.S.C. § 2 (2000), a felony offense, and sentenced to a term of three (3) years probation commencing on May 5, 2004. The issue before the Disciplinary Board and before this Court is what discipline is appropriate under the circumstances.

{2} Evidence submitted to the hearing committee showed that beginning in 1994 and continuing through 2000, Respondent claimed extensive business losses on his federal income tax returns offsetting his legitimate income. The losses were allegedly generated from a fictitious offshore warehouse facility named DoChris. DoChris was in fact a shell, having been duly incorporated in

Costa Rica but conducting no business and sustaining no real losses. Through this mechanism, Respondent allegedly defrauded the United States of more than $425,000 in federal income taxes over the seven-year period. The filing of the false returns was made possible by an illicit international network of accountants, lawyers, and financial institutions, who depended upon the inconvenience to the government of obtaining information from foreign authorities to escape detection of their crimes.

{3} Respondent was introduced to this scheme by his accountant, also an attorney. He testified at the hearing before the Disciplinary Board hearing panel that while he thought the plan was "too good to be true," he never sought another opinion as to the legality of his actions. Even after realizing that the tax shelter scam might be illegal, he continued to utilize it until served with a subpoena for documents by federal authorities in 2002. Shortly thereafter, Respondent acknowledged his wrongdoing and cooperated fully with IRS agents and federal prosecutors.

{4} The hearing committee and a three-member panel of the Disciplinary Board found that by virtue of his conviction and his actions, Key had committed violations of several of the Rules of Professional Conduct, Rules 16–101 to 16–805 NMRA 2003. Specifically, Respondent's conduct violated Rule 16–804(B) by having committed a criminal act that reflects adversely on his honesty, trustworthiness, or fitness as a lawyer in other respects; Rule 16–804(C) by engaging in conduct involving dishonesty, fraud, deceit, and/or misrepresentation; and Rule 16–804(H) by engaging in conduct that adversely reflects on his fitness to practice law. The hearing committee recommended a sanction of suspension for the duration of Key's criminal probation with all but eighteen (18) months of the suspension to be deferred. Although the Disciplinary Board panel agreed with the suspension recommendation, the panel, with one member dissenting, nevertheless, recommended that all of the suspension be deferred and that Respondent be placed on probation pursuant to Rule 17–206(B) NMRA 2003 for a period to coincide with his criminal probation.

{5} This Court has not formally adopted the ABA Standards for Imposing Lawyer Sanctions, but we do look to them for guidance in determining appropriate sanctions for attorneys found guilty of misconduct and to insure a certain degree of consistency, although each case is decided on the basis of its own merits. The ABA Standards suggest that "[a]bsent aggravating or mitigating circumstances ... [d]isbarment is generally appropriate when ... a lawyer engages in serious criminal conduct[,] a necessary element of which includes intentional interference with the administration of justice, *false swearing, misrepresentation, fraud,* extortion, misappropriation, or theft...." *Id.* at 5.11(a) (emphasis added).

{6} Pursuant to the ABA Standards, the following facts may be considered as factors in mitigation: (1) Respondent self-reported his conviction and cooperated fully with the office of disciplinary counsel, (2) Respondent's absence of a prior disciplinary record, (3) Respondent's reputation as a competent and ethical attorney, (4) Respondent's cooperation with federal authorities, (5) Respondent's expression of remorse for his misconduct, and (6) imposition of other penalties against Respondent. On the other hand, the fact that he committed a serious crime, exhibited a dishonest or selfish motive, and has substantial experience in the practice of law are factors in aggravation.

{7} Throughout these proceedings, Respondent did not contend that he is blameless or should escape sanction for his actions. He has, however, stressed that his continued practice of law would in no way endanger the public—a fact which is conceded by disciplinary counsel. He points out that if given probation, he could continue to serve his clients and to render the community service ordered as part of his probation for his criminal offense.

{8} It is true that the ultimate purpose of attorney discipline is the protection of the public. *See In re Allred,* 2001–NMSC–019, ¶ 18, 130 N.M. 490, 27 P.3d 977 (2001); *In re Sheehan,* 2001–NMSC–020,

¶ 21, 130 N.M. 485, 27 P.3d 972 (2001); *In re Sullivan,* 108 N.M. 735, 736, 779 P.2d 112, 113 (1989). It is not, however, the only purpose. This Court has made clear that it is equally concerned with the public's perception of the profession and the legal system.

The purpose of attorney discipline is not solely to protect clients from being harmed by their attorneys, but also to protect the profession and the administration of justice. The public cannot be expected to have respect for our system of justice if we permit the officers of our courts to violate the very laws they are sworn to uphold and upon which they advise and counsel others to comply.

*In re Cox,* 117 N.M. 575, 576, 874 P.2d 783, 784 (1994).

{9} Because of this concern, attorneys found to have committed criminal acts are generally suspended or disbarred. The rationale for this practice was first articulated in *In re Griffin,* 101 N.M. 1, 677 P.2d 614 (1983). Griffin had been summarily suspended after pleading no contest to the felony of securities fraud relating to the purchase of residential property and sentenced to eighteen (18) months probation. The hearing committee and panel of the Disciplinary Board recommended his suspension for a period of six (6) months commencing at the time of his summary suspension. The Court rejected the recommendation and disbarred Griffin for the remainder of his period of probation, stating that "it is inconsistent with the practice of law under a license granted by this Court for an attorney to be allowed to practice law while he is on probation for a criminal sentence for a serious crime such as this." *Id.* at 1, 677 P.2d at 614. The *Griffin* opinion was quickly followed by *In re Norrid,* 100 N.M. 326, 670 P.2d 580 (1983), a case involving an attorney's willful failure to file an income tax return. Again, despite a recommendation by the Disciplinary Board for a six (6) month period of suspension, this Court imposed disbarment for the remainder of the probationary period noting that "it is the policy of this Court that attorneys should not be allowed to practice law while on probation under a criminal sentence." *Id.* at 326, 670 P.2d at 580.

{10} This Court has, with one exception, consistently disbarred or suspended attorneys convicted of and sentenced for criminal acts. *See, e.g., In re Bryan,* 116 N.M. 745, 867 P.2d 415 (1993) (attorney suspended with reinstatement automatic upon completion of probation for misdemeanor offense of failing to file income tax return); *In re Lopez,* 116 N.M. 699, 866 P.2d 1166 (1994) (attorney disbarred after conviction of embezzlement over $2500); *In re Esquibel,* 113 N.M. 24, 822 P.2d 121 (1992) (attorney disbarred for conviction of crime of receiving bribe by public official); *In re Kraemer,* 112 N.M. 101, 811 P.2d 1312 (1991) (attorney disbarred for conviction of securities fraud); *In re McCulloch,* 103 N.M. 542, 710 P.2d 736 (1985) (attorney disbarred for tampering with evidence and making a false report).

{11} Respondent points to *In re Stribling,* No. 26,781, as an example of when this Court has departed from its policy that "attorneys should not be allowed to practice law while on probation under a criminal sentence." The disciplinary case involving attorney Stribling came to this Court on a recommendation by the Disciplinary Board to adopt a conditional agreement "not to contest and consent to discipline." Attorney Stribling had been placed on probation in state court without an adjudication of guilt pursuant to NMSA 1978, Section 31–20–13 (1993), and upon his successful completion of probation the charges were to be dismissed. The stipulated disciplinary agreement called for attorney Stribling to be suspended from the practice of law for the eighteen (18) months of his probation, with the suspension deferred subject to his compliance with several conditions. This Court was persuaded by the stipulated disciplinary agreement that because an adjudication of guilt had not been entered, departure from the above-stated policy was appropriate in that case. Here, Respondent argues that his actions were less reprehensible than attorney Stribling and points out that had he been prosecuted in state court he would have had the same opportunity as attorney Stribling to have a conditional discharge of the underlying offenses. Since Respondent was prosecuted in federal court, he argues no such conditional

discharge was available to him. We need not decide in this case whether the very-limited exception made in *In re Stribling* should be applied on other facts. While there might conceivably be a situation where enforcement of this policy could be viewed as unjust, we see no reason to change it under the circumstances of this case and reiterate our previously stated position. The factors in mitigation applicable to Respondent obviate the need for disbarment at this time. We do not agree, however, with the Disciplinary Board that probation is appropriate.

{12} **NOW, THEREFORE, IT IS ORDERED** that Christopher S. Key be and hereby is suspended from the practice of law pursuant to Rule 17–206(A)(2) for the duration of his federal probation and that said suspension shall be effective on March 23, 2005;

{13} **IT IS FURTHER ORDERED** that pursuant to Rule 17–214(B)(1) Respondent will be automatically reinstated to the practice of law upon a showing that he has been released from probation;

{14} **IT IS FURTHER ORDERED** that Respondent shall follow the directives of Rule 17–212 and file his affidavit of compliance on or before April 4, 2005; and

{15} **IT IS FURTHER ORDERED** that Respondent shall pay the costs of this action to the disciplinary board in the amount of $610.38 on or before June 6, 2005.

{16} **IT IS SO ORDERED.**