2006-NMSC-012

131 P.3d 653

**In the MATTER OF RONALD D. MIKUS,**

An Attorney Licensed to Practice Before the Courts of the State of New Mexico.

No. 29,313.

Supreme Court of New Mexico.

March 28, 2006.

Virginia L. Ferrara, Chief Disciplinary Counsel, Albuquerque, NM, for Petitioner.

Briggs F. Cheney, Esq., Albuquerque, NM, for Respondent.

## OPINION

PER CURIAM.

{1} This attorney disciplinary proceeding comes before the Court pursuant to the Rules Governing Discipline. We are called upon to decide whether attorney Ronald D. Mikus (Respondent) engaged in conduct prior to his admission to the bar that warrants disciplinary sanctions. For the reasons that follow, we adopt the recommendation of the Disciplinary Board to suspend Respondent from the practice of law pursuant to Rule 17–206(A)(2) NMRA 2006.

## BACKGROUND

{2} Prior to submitting his application for admission to the New Mexico Bar, Respondent and a former girlfriend traveled to Mexico and, on the return trip, became involved in an altercation near the border patrol checkpoint on I–25 north of Las Cruces, New Mexico. Apparently, the dispute arose because Respondent and his former girlfriend had purchased drugs in Mexico, including steroids, and Respondent was concerned that his former girlfriend would alert border patrol agents to the presence of the steroids in the car. The confrontation at the side of the road resulted in the girlfriend tumbling down an embankment, causing serious injury. Subsequently, a New Mexico state police officer contacted Respondent to schedule an appointment to discuss the incident. Although Respondent initially agreed to meet with the officer, Respondent cancelled the meeting after discussing the matter with an attorney. Shortly thereafter, Respondent submitted his application to take the New Mexico bar exam.

{3} A few days after taking the New Mexico bar exam, Respondent received a target letter notifying him of a grand jury investigation into a criminal complaint filed against him. Respondent subsequently appeared before the grand jury and was ultimately in-

dicted on charges of aggravated battery against a household member and false imprisonment, both felony offenses. Less than two months after his indictment, Respondent was sworn-in to the New Mexico bar. Shortly thereafter, Respondent was convicted by a jury on both charges in the indictment, and the trial court imposed a deferred sentence of three years and placed Respondent on supervised probation.

{4} In Respondent's application for admission to the State Bar of New Mexico, the application asks, "Have you ever been charged with, arrested, or questioned regarding the violation of any law, including juvenile offenses?" If the answer is positive, the application asks for full details,

> including dates, exact name and location of court, if any, case [number], references to court records, if any, the facts, the disposition of the matter; if no court records are available, give to the best of your ability the names and addresses of all persons involved, including counsel. (Include all such incidents no matter how minor the infraction or whether guilty or not except for minor violations which did not involve a court appearance.)

Respondent answered "no" to this question. The application also provided that "[i]f information becomes available subsequent to the date of this application you must supplement the application prior to your admission." In this regard, Respondent signed an oath providing, in part, that,

> I fully understand that I have a continuing obligation to keep the Board of Bar Examiners advised of any additional information that would be pertinent to this application or my qualifications, prior to my admission. I also understand that I will not be admitted to the New Mexico Bar until any character and fitness issues arising from the application process have been resolved in my favor.

Respondent concedes that he never supplemented his application with information about his criminal indictment.

{5} The amended specification of charges against Respondent alleged several violations of the Rules of Professional Conduct. With regard to Respondent's failure to supplement his bar application, Respondent was charged with violating Rule 16–801(B) NMRA 2006 for failing to disclose a fact necessary to correct a misapprehension known by Respondent to have arisen in connection with a bar admission application, Rule 16–804(C) NMRA 2006 for engaging in conduct involving dishonesty, deceit, or misrepresentation, and Rule 16–804(H) for engaging in conduct reflecting adversely upon fitness to practice law. With regard to Respondent's criminal conviction, he was charged with violating Rule 16–804(B), for committing a criminal act reflecting adversely upon honesty, trustworthiness, or fitness, and Rule 16–804(H) for again engaging in conduct reflecting adversely upon fitness to practice law.

## DISCUSSION

{6} Respondent admits that he was under an obligation to supplement his bar application with information about his criminal conduct, and Respondent concedes that he failed to do so. Respondent also acknowledges this Court's general policy of prohibiting an attorney who has been convicted of a crime from practicing law while serving a sentence of probation. *See, e.g., In re Lopez,* 116 N.M. 699, 866 P.2d 1166 (1994); *In re Bryan,* 116 N.M. 745, 867 P.2d 415 (1993); *In re Griffin,* 101 N.M. 1, 677 P.2d 614 (1983); *In re Norrid,* 100 N.M. 326, 670 P.2d 580 (1983). However, Respondent maintains that suspension is too severe a sanction in his case because the timing of his criminal conduct and bar application demonstrates that he did not intentionally fail to supplement his bar application and because his continued practice of law will not pose a danger to the public. For the reasons that follow, we conclude that suspension is the appropriate sanction in this case.

## FAILURE TO SUPPLEMENT BAR APPLICATION

{7} As noted above, applicants to the State Bar of New Mexico are under an affirmative duty to update their bar applications to inform the Board of Bar Examiners of any occurrence or new information that might bear upon their qualifications or fitness to practice law. To underscore the importance of this obligation, a member of the Board of

Bar Examiners testified before the hearing committee that had the Board known of Respondent's indictment, the Board would have not recommended admitting Respondent to the bar even though Respondent passed the bar examination. Consequently, had Respondent been forthright with the Board of Bar Examiners, as he should have been, in all likelihood he would not currently be a member of this bar.

{8} Even though Respondent's failure to supplement his bar application was not discovered in time to affect the decision to admit him to the bar, our own case law recognizes that misrepresentations on a bar application can be grounds for discipline. *See In re Cherryhomes*, 115 N.M. 734, 736, 858 P.2d 401, 403 (1993) (concluding that discipline was appropriate because the attorney forged a physician's signature on the certificate of fitness required by the Arizona bar application in another state, which raised serious concerns about the attorney's honesty). We recognize that Respondent did not include an affirmative misrepresentation in his application as was the case in *In re Cherryhomes*.

{9} Nevertheless, whether the misrepresentation was by commission or omission, Respondent's failure to supplement his bar application calls into question his fitness to practice law. As one court has observed,

[c]andor and honesty are a lawyer's stock and trade. Truth is not a matter of convenience. Sometimes lawyers may find it inconvenient, embarrassing, or even painful to tell the truth. Nowhere is this more important than when an applicant applies for admission to the bar. In all instances, the applicant must display complete candor in all filings and proceedings required by the [bar]. Anyone who does not grasp that fundamental proposition should not be a lawyer.

*In re Scavone*, 106 N.J. 542, 524 A.2d 813, 820 (1987) (citations and internal quotation marks omitted); *see also In re Press*, 627 A.2d 842 (R.I.1993) (stating that "even though the truth may hurt at times, honesty is to be demanded and expected of all those who seek to practice law"). We are not alone in requiring prospective members of the bar to supplement their bar applications with relevant information as it becomes available. *See In re Chandler*, 161 Ill.2d 459, 204 Ill. Dec. 249, 641 N.E.2d 473, 478 (1994) (recognizing a continuing duty on every bar applicant to immediately disclose information relevant to the applicant's character and fitness as it becomes available). Without a doubt, Respondent's criminal indictment was a matter directly relevant to his character and fitness to practice law. By failing to supplement his bar application with that information, Respondent only made a bad situation worse.

{10} Respondent nevertheless attempts to minimize the seriousness of his actions by suggesting they were unintentional. However, the hearing committee who had the opportunity to take Respondent's testimony and observe him first-hand concluded that "Respondent failed to disclose a fact necessary to correct a misrepresentation known by him to have arisen in the matter," and "engaged in conduct involving dishonesty, deceit, or misrepresentation." We recognize that we are not bound by the findings and conclusions of the Disciplinary Board's hearing committee, and are free to accept them in whole, in part, or not at all. *See* Rule 17–316(D) NMRA 2006. But, to the extent that Respondent is arguing that the conclusions of the hearing committee are not supported by substantial evidence, we disagree. *See* Rule 17–316(A) (allowing for challenges to findings relied on by the Disciplinary Board for lack of substantial evidence).

{11} As disciplinary counsel has pointed out, there is good reason to doubt Respondent's claim that he did not think about the importance of supplementing his bar application when he was under investigation and indicted by the grand jury. In particular, we note that Respondent acknowledged that he was concerned that his admission to the bar, and his legal career, could be jeopardized if the border patrol discovered the drugs in the car or if he was ultimately convicted on the grand jury indictment. That realization demonstrates an awareness by Respondent that criminal conduct could be an impediment to admission to the bar. And, given that the bar application asked questions about crimi-

nal conduct and advised Respondent of his duty to supplement his application with pertinent information as it became available, we have no basis for rejecting the findings and conclusions to the effect that, by intentionally failing to supplement his bar application, Respondent violated the Rules of Professional Conduct. *See In re Patton,* 86 N.M. 52, 54, 519 P.2d 288, 290 (1974) (recognizing that "the findings and recommendation of a Hearing Committee are entitled to great weight"). We now examine whether Respondent's criminal conviction was properly considered by the Disciplinary Board in reaching its recommendation to suspend Respondent from the practice of law for the duration of his term of probation when the conduct that led to the conviction occurred before his admission to the bar.

## CRIMINAL PROBATION PRECLUDES PRACTICING LAW

{12} From the beginning of these proceedings, Respondent has pointed out that his criminal conduct occurred before he was admitted to the bar. Although this Court has not had occasion to address the issue, several other states have considered misconduct prior to admission as a basis for subsequent discipline. *See, e.g., Stratmore v. State Bar of Cal.,* 14 Cal.3d 887, 123 Cal.Rptr. 101, 538 P.2d 229 (1975) (recognizing that an attorney could be disciplined even though the misconduct may have preceded admission to practice); *State ex rel. Neb. State Bar Ass'n v. Blackstone,* 246 Neb. 220, 517 N.W.2d 400 (1994) (indicating that an attorney who passed forged checks between taking the bar examination and being admitted to the bar received disbarment); *In re Wong,* 275 A.D.2d 1, 710 N.Y.S.2d 57 (2000) (stating that an attorney's actions involving sexual misconduct with a minor prior to admission, but not discovered until after admission, constitutes "misconduct"); *Office of Disciplinary Counsel v. Clark,* 40 Ohio St.3d 81, 531 N.E.2d 671 (1988) (indicating that an attorney was indefinitely suspended for participation in a drug smuggling operation while in law school and prior to admission, although not convicted until after admission); *State ex rel. Oklahoma State. Bar Ass'n v. Flanery,* 863 P.2d 1146, 1150 (Okla.1993) (holding that an attorney's pre-admission conduct of embezzling $71,000 from family members warranted disbarment because it went "to the heart of respondent's fitness to practice law"); *Office of Disciplinary Counsel v. Zdrok,* 538 Pa. 41, 645 A.2d 830 (1994) (suspending an attorney based, in part, on his pre-admission conduct of nighttime loitering and prowling in violation of a Pennsylvania criminal statute).

{13} In considering whether pre-admission conduct should be the basis for attorney discipline, the Pennsylvania Supreme Court found

> no unfairness in disciplining [the respondent] for conduct committed prior to his admission to the bar. Disciplinary proceedings are not for the purpose of punishment, but rather seek to determine the fitness of an officer of the court to continue in that capacity and to protect the courts and the public from the official ministration of persons unfit to practice.

*Zdrok,* 645 A.2d. at 834. We agree with that assessment. Accordingly, to the extent that Respondent may suggest that suspension is not warranted simply because his conduct occurred prior to his admission to the bar, we hold that an attorney may be disciplined for acts committed prior to admission but not discovered until after admission.

{14} Aside from suggesting that suspension should not be based on pre-admission conduct, Respondent also suggests that suspension is too severe a sanction in his case because his continued practice of law does not pose a danger to the public. In this regard, Respondent attempts to distinguish his case from *In re Key,* 2005–NMSC–014, 137 N.M. 517, 113 P.3d 340, a case in which we recently reiterated our well-established position that, absent exceptional and very limited circumstances, attorneys on probation for serious crimes will not be permitted to practice law while on probation. Respondent tries to distance himself from *Key* by maintaining that the criminal conviction at issue in *Key* involved crimes of dishonesty while Respondent's crimes do not. However, Respondent's attempts to distinguish his situation from *Key* are misguided because Respondent is not being disciplined simply because he was convicted of a crime and sen-

tenced to a term of probation. Rather, as discussed above, Respondent also is being disciplined for the dishonest act of failing to supplement his bar application with the fact of his criminal indictment. As such, even though Respondent argues that his crimes were not ones of dishonesty, his attempt to hide those crimes from the Board of Bar Examiners calls into question his character for honesty and his fitness to practice law. For this reason, we will not depart from our general policy of requiring suspension or disbarment while an attorney serves a criminal sentence of probation.

{15} Relying on this Court's often-stated principle that disciplinary sanctions are not to punish the lawyer, but rather to protect the public, *see Key*, 2005–NMSC–014, ¶ 8, 137 N.M. 517, 113 P.3d 340, Respondent points to his conduct since being admitted to the bar as evidence that his continued practice of law will not endanger the public. While Respondent may have performed satisfactorily on probation for his crimes so far, and while Respondent may have successfully practiced as an attorney for almost three years under the supervision of his current law firm while this case progressed through the disciplinary process, we see no reason to reward Respondent for his failure to be candid with the Board of Bar Examiners and, by extension, with this Court.

{16} Even had he been acquitted of all charges, Respondent still would have been subject to discipline for his failure to be candid with the Board of Bar Examiners in the first instance as we discussed above. Moreover, when an attorney is sentenced to a term of probation in a criminal proceeding, we often impose discipline not just to protect the public, but also the profession and the administration of justice. *Key*, 2005–NMSC–014, ¶ 8, 137 N.M. 517, 113 P.3d 340; NMRA, Discipline Rules, Preface ("[T]he purpose of discipline of lawyers is the protection of the public, the profession and the administration of justice."). Given this important purpose, and given that Respondent did engage in dishonest conduct, we find no basis for carving out the type of exception alluded to in *Key*.

{17} In light of Respondent's conduct before his admission to the bar, and in light of his criminal conviction shortly after his admission to the bar, we agree with the Disciplinary Board's assessment that the disciplinary sanction of suspension is warranted in this case.

{18} **NOW, THEREFORE, IT IS ORDERED** that Respondent Ronald D. Mikus is hereby suspended from the practice of law pursuant to Rule 17–206(A)(2) for a time certain until January 23, 2007, which date coincides with the deferred sentence effective September 7, 2005, imposed by the district court;

{19} **IT IS FURTHER ORDERED** that during the period of suspension Respondent shall comply with all terms and conditions of the probation as set forth in the district court order;

{20} **IT IS FURTHER ORDERED** that for a two-year period following the completion of his probation under the district court order, *i.e.*, from January 23, 2007, until January 23, 2009, Respondent shall enter into a monitoring agreement to be approved by disciplinary counsel which requires him to continue participation in twelve-step meetings on a three-day-a-week regime or an equivalent program;

{21} **IT IS FURTHER ORDERED** that Respondent shall be subject to random alcohol screening during the two-year probationary period following the completion of his probation under the district court order;

{22} **IT IS FURTHER ORDERED** that Respondent shall take and pass the ethics portion of the multi-state bar examination prior to reinstatement to the probationary practice of law;

{23} **IT IS FURTHER ORDERED** that Respondent shall comply with the requirements of Rule 17–212 NMRA 2006 and file his affidavit of compliance on or before November 16, 2005; and

{24} **IT IS FURTHER ORDERED** that costs in the amount of $764.59 hereby are assessed against Respondent and shall be paid to the Disciplinary Board on or before

November 15, 2005, or thereafter bear interest at the rate of 15 percent per annum.

{25} **IT IS SO ORDERED.**