## IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

Opinion Number: 2019-NMSC-010

Filing Date: May 16, 2019

NO. S-1-SC-37306

IN THE MATTER OF
DANIEL M. SALAZAR

An Attorney Suspended from
the Practice of Law Before the Courts
of the State of New Mexico

Released for Publication July 2, 2019

Jane Gagne
Albuquerque, NM

for Disciplinary Board

Debra S. Doll
Albuquerque, NM

Law Works, LLC
John A. McCall
Albuquerque, NM

for Respondent

## OPINION

**VIGIL, Justice.**

## I.    INTRODUCTION

**{1}**    In this disciplinary case the Court addresses the flagrant and intentional failure of Daniel M. Salazar (Salazar) to comply with the Rules of Appellate Procedure, among other rules and orders of this Court. This case came before the Court upon the recommendation of the Disciplinary Board (the Board) to sustain charges and impose discipline against Salazar for multiple violations of the Rules of Professional Conduct. The Board's request centers on its conclusion that Salazar repeatedly failed to comply with certain Rules of Appellate Procedure relating to the timely filing of appellate pleadings. The Board concluded that Salazar violated Rule 16-101 NMRA (competence), Rule 16-103 NMRA (diligence), Rule 16-302 NMRA (failure to expedite

litigation), and Rule 16-804(D) NMRA (engaging in conduct prejudicial to the administration of justice). The Board recommended a one-year deferred suspension of Salazar, during which time Salazar would be supervised on all appellate matters.

**{2}** This Court adopted the Board's findings and conclusions with one exception and modified the Board's recommended discipline, indefinitely suspending Salazar for a period of no less than one year, effective thirty days from November 9, 2018. Salazar's history of disciplinary offenses relating to similar intentional misconduct and his refusal to acknowledge the wrongfulness of his conduct justified his prompt suspension. When Salazar failed to comply with both our order of suspension and the requirements for suspended attorneys under the Rules Governing Discipline, we held Salazar in contempt of court and increased his indefinite suspension to a period of no less than eighteen months.

**{3}** We begin by explaining that attorneys must adhere to the rules of this Court as those rules serve to protect the interests of all clients and the equal administration of justice under the law. If one disagrees with the rules, there is a process by which court rules are amended. Ignoring them is not an option. Procedural gamesmanship in an effort to skirt the requirements of our rules cannot and will not be tolerated.

## II.     BACKGROUND

**{4}** Salazar has been practicing law in New Mexico for nearly twenty years with a focus on criminal defense. Since 2000, Salazar has been a contract attorney with the Law Office of the Public Defender (LOPD). This is not the first time Salazar has been subject to attorney discipline. Outside of these proceedings, Salazar has twice been admonished by the Board for his mismanagement of post-trial procedure.

**{5}** Two Rules of Appellate Procedure are essential to understanding Salazar's misconduct in the instant proceedings, as well as his misconduct in the past: Rule 12-201 NMRA and Rule 12-208 NMRA. First, under Rule 12-201(A)(1)(b), a party must file a notice of appeal within thirty days of the judgment or order it wishes to appeal. Second, under Rule 12-208, for most types of appeals, trial counsel is responsible for "preparing and filing a docketing statement in the Court of Appeals or a statement of the issues in the Supreme Court" within thirty days of the filing of the notice of appeal. Rule 12-208(A)-(B). The docketing statement must meet certain requirements, all of which are outlined in Rule 12-208(D). Among those is the requirement that the docketing statement include "a statement of the issues presented by the appeal, including a statement of how they arose and how they were preserved in the trial court[.]" Rule 12-208(D)(4). At the crux of Salazar's professional misconduct is his refusal to comply with Rules 12-201 and 12-208. To provide context and additional support for the ultimate discipline we impose upon him, we first address Salazar's prior misconduct.

## A.     Prior Professional Misconduct

**{6}** In April 2015, Salazar accepted an informal admonition for failure to timely file a docketing statement in a client's appeal despite the Court of Appeals' order to do so.[1] As the contract public defender at trial, Salazar was responsible for filing a docketing statement with the Court of Appeals after his client filed a *pro se* notice of appeal. *See* Rule 12-208(A). Salazar did not file the docketing statement within the thirty-day deadline imposed by Rule 12-208(B). Only after a hearing to show cause before the Court of Appeals—at which Salazar argued that he did not believe an appeal was necessary—did he eventually file the docketing statement, six months after his client filed the notice of appeal. Because Salazar failed to comply with his client's wishes to appeal and ignored for some time an order from the Court of Appeals to file the docketing statement, Salazar was informally admonished by the Board for violating four Rules of Professional Conduct: Rule 16-101; Rule 16-102(A) NMRA (settlement authority); Rule 16-103; and Rule 16-804(D).

**{7}** Salazar was again before the Board in May 2017. The Board issued a formal reprimand of Salazar for dilatory and incompetent post-trial practice related to another client's petition for writ of habeas corpus. *See In re Salazar*, Disciplinary No. 01-2016-733, *Bar Bulletin*, N.M. State Bar, June 7, 2017, at 15 (Formal Reprimand dated May 19, 2017). Salazar served as the contract public defender for purposes of his client's post-conviction habeas corpus proceedings. *Id.* Salazar entered his appearance on behalf of his client on March 28, 2002. *Id.* By that time, the client had already filed a petition for writ of habeas corpus and the State had filed its response. *Id.* Salazar failed to file his client's reply to the State's response for over four years. *See id.* In May 2006, the district court denied the petition for writ of habeas corpus. *Id.* One month after the district court's denial of the petition, Salazar filed his client's reply and a motion to reconsider the order denying the petition. *Id.* Over a period of two years, Salazar requested no less than six continuances of the hearing on his motion to reconsider. *Id.* He claimed that he needed more time to conduct discovery, yet as the Board found, he took no action to compel discovery from the State. *Id.* In December 2014, eight years after the district court's denial of the petition for writ of habeas corpus, Salazar stipulated on behalf of his client to a dismissal of the petition without prejudice. *Id.*

**{8}** Six months later, Salazar's client filed a complaint with the Board alleging that Salazar had not communicated with him since January 2009. *Id.* Salazar claimed that he had withdrawn from representation "in or about January 2009." *Id.* However, the Board found that Salazar failed to inform his client of his withdrawal, never filed a motion to withdraw, and continued to act as defense counsel when he stipulated to the dismissal of the petition in 2014—five years after his claimed withdrawal. *See id.* The Board formally reprimanded Salazar for violations of Rule 16-101, 16-103, Rule 16-104 NMRA (failure to communicate), Rule 16-116(A) NMRA (failure to withdraw from representation), Rule 16-302, and Rule 16-804(D). *In re Salazar*, *Bar Bulletin*, N.M. State Bar, June 7, 2017, at 15.

---

[1]Though informal admonitions from the Board typically remain confidential, the admonition and underlying investigation may become public record should the Board later file a formal specification of charges against the same attorney. *See* Rule 17-304(A)(1)(a) NMRA.

**{9}**     Between the two instances of prior misconduct described, Salazar violated the same four Rules of Professional Conduct at issue in these proceedings: Rules 16-101, 16-103, 16-302, and 16-804(D). We determine that Salazar has shown an inability to learn from his past misconduct and the discipline imposed for such misconduct. This is evidenced by his continued failure, directly at issue in the instant proceedings, to manage his clients' appeals in a competent, diligent, and expeditious manner. As we will explain, his lack of respect for the Rules of Appellate Procedure, the Rules of Professional Conduct, and the Rules Governing Discipline is no longer tolerable. We now address Salazar's misconduct as it applies to the instant case: his representation of Jason Nowicki and Sean Godkin.[2]

## B.     Misconduct at Issue

### 1.     Nowicki appeal

**{10}**     Salazar was Nowicki's attorney at his trial in February 2015. Nowicki was convicted of first-degree murder and other offenses. On February 1, 2016, the district court entered its judgment and sentenced Nowicki to life imprisonment plus eighteen years. Salazar did not file a notice of appeal on behalf of Nowicki within thirty days of the entry of judgment as required under Rule 12-201(A)(1)(b). In fact, Salazar did not file a notice of appeal until November 9, 2018, the day after this Court conducted oral argument in the instant proceedings. As such, the notice of appeal was filed nearly three years after Nowicki was sentenced.

**{11}**     In September 2017, Nowicki filed a complaint with the Board stating that he had not been able to contact Salazar and was concerned that no appellate motions had been filed on his behalf. The Board initiated an investigation as a result of Nowicki's complaint. In the course of its investigation of the Nowicki matter, disciplinary counsel discovered that Salazar had failed to comply with the Rules of Appellate Procedure in his representation of yet another client.

### 2.     Godkin appeal

**{12}**     Salazar represented Godkin at his trial in June 2016. That trial resulted in a mistrial, and a new trial was set for August 2, 2016. Salazar did not object to the new trial setting and did not obtain transcripts from the first trial to use at the new trial. Godkin was convicted of drug trafficking and possession charges at the second trial. Salazar timely moved for a new trial based on the expeditious setting of the second trial date, his inability to obtain transcripts from the first trial, and an alleged relationship between the trial judge and Godkin's mother. The motion for new trial was denied, and

---

[2]The events underlying this disciplinary proceeding are the subject of appeals pending before this Court and the Court of Appeals. *See State v. Nowicki*, S-1-SC-37388; *State v. Godkin*, A-1-CA-36509. We discuss the facts of those cases based on the Board's findings of fact. Our analysis and conclusions in this proceeding are not intended to influence the legal merits of the pending appeals.

the district court notified Salazar of its entry of judgment and sentence on November 4, 2016.

**{13}**     Once again, Salazar failed to file a notice of appeal within thirty days of the entry of judgment as required by Rule 12-201(A)(1)(b). Instead, he filed a renewed motion for new trial in April 2017 after a new judge was assigned to Godkin's case. The renewed motion was identical to the original motion, was untimely, and was denied. In its denial of the renewed motion for new trial, the district court ordered Salazar to file a notice of appeal and docketing statement.

**{14}**     Salazar filed the untimely notice of appeal in June 2017. One month later, he filed a docketing statement that was nearly identical to his motions for new trial. The docketing statement also did not comply with Rule 12-208(D) as it did not properly address the issues on appeal and how those issues were preserved at trial. In addition, Salazar failed to timely serve upon the district court a copy of the docketing statement as required by Rule 12-208(C). In an apparent effort to remedy this error, Salazar refiled the docketing statement in the Court of Appeals and then served a copy upon the district court in October 2017.

**{15}**     On December 11, 2017, the Court of Appeals rejected the docketing statement and ordered Salazar to file an amended docketing statement within twenty days. The order explained that the original docketing statement did not meet the requirements of Rule 12-208 because it failed to provide sufficient facts for the Court to adequately review the appellate issues raised. The order also noted the "striking similarities" between the docketing statement and the motions for new trial. For example, the docketing statement stated that opposition to the "present motion" was presumed and requested that the Court of Appeals enter an order granting a new trial. On January 3, 2018, Salazar filed an amended docketing statement. This docketing statement was accepted by the Court of Appeals though the Court noted it "remain[ed] deficient" and alerted Salazar that by neglecting to produce an adequate docketing statement "counsel runs the risk of prejudicing Defendant's appeal by failing to provide this Court with sufficient information."

## C.     The Disciplinary Proceedings

**{16}**     After completing its investigation into the Nowicki and Godkin appeals, the Board filed a specification of charges against Salazar in January 2018. In the course of the subsequent proceedings, including his hearing before this Court, Salazar asserted that Rules 12-201 and 12-208 do not apply with full force to criminal defense trial attorneys.

**{17}**     Salazar's contention that he need not adhere to the thirty-day deadline imposed by Rule 12-201 first arose in his amended response to disciplinary counsel's initial inquiry based on Nowicki's complaint. In that response, Salazar explained that Nowicki's appeal " 'as of right' cannot be lost simply because the court imposed time table has been exceeded." Salazar continued that "Nowicki's appeal will likely begin in earnest

within the next several month's [sic]." The response letter was dated December 11, 2017—nearly two years after Nowicki was sentenced to life imprisonment.

**{18}** Salazar maintained his argument that criminal defense trial attorneys need not comply with the filing deadlines set forth in the Rules of Appellate Procedure at his hearing before the Board in June 2018. When asked by disciplinary counsel whether he disputed that a notice of appeal is due thirty days after a judgment is entered, Salazar stated, "Yes and no. According to the rules, it's due 30 days after the judgment, but according to case law, it's not." He continued:

> [W]e have a little bit of wiggle room. There are cases that tell us that the appeal from a conviction is a matter of right, and it can't be lost simply because the defence [sic] attorney misses a deadline . . . . [I]n reality, it matters almost zero if a deadline is missed on a docketing statement, things of that nature, as far as the criminal law goes. . . . [A]lthough it's due under the rules, it's not necessarily due under the case law.

Throughout the hearing, Salazar was not able to provide legal authority by way of a citation to case law that would permit defense counsel to skirt the Rules of Appellate Procedure. In his briefing to this Court, Salazar identified *State v. Duran*, 1986-NMCA-125, 105 N.M. 231, 731 P.2d 374, as authority to support his contention that criminal defense attorneys need not comply with the deadlines of Rule 12-201 because "[t]he practical translation [of *Duran*] is that the higher courts will address an appeal irrespective of the deadlines." We disagree with Salazar's interpretation of *Duran*. As we will discuss, *Duran* does not stand for the proposition that criminal defense attorneys may ignore the Rules of Appellate Procedure.

**{19}** Further, Salazar admitted at the hearing before the Board that the docketing statement he filed on behalf of Godkin did not contain a statement of how the appellate issues arose or were preserved at trial, despite the requirements of Rule 12-208(D)(4). Yet, he did not agree that the docketing statement did not comply with Rule 12-208, arguing that the docketing statement was in compliance because it "was accepted by the Court of Appeals." When confronted with the Court of Appeals' admonition that Salazar "runs the risk of prejudicing [his client's] appeal by failing to provide this Court with sufficient information," Salazar incorrectly responded that it is the job of *appellate* counsel to ensure that the docketing statements are correct. He further justified his actions by testifying that criminal defense trial attorneys "do the best we can" in drafting docketing statements to the standards required by Rule 12-208(D). We underscore in this opinion that the Rules of Professional Conduct require a much more competent and diligent effort to comply with the rules of procedure and to expeditiously serve the client than was demonstrated by Salazar in this case. The Board concluded that Salazar violated Rules 16-101, 16-103, 16-302, and 16-804(D).

## III.    DISCUSSION

**{20}** In reviewing the proceedings and determining the proper course of discipline, we draw from the Board's findings of fact and view the evidence in the light most favorable to those findings. *See In re Bristol*, 2006-NMSC-041, ¶ 28, 140 N.M. 317, 142 P.3d 905 (per curiam). We review the Board's conclusions of law de novo. *See id.* ¶ 18. As such, we adopt the Board's findings of fact and conclusions of law with one exception. We disagree with the Board that Salazar's "deficiencies" can be attributed "to his infrequent appellate work," as the Rules of Appellate Procedure at issue here apply to *trial* counsel, not appellate counsel. *See* Rules 12-201, -208.

## A.     Professional Misconduct

**{21}** In our view, Salazar's pattern of practice over many years demonstrates an intentional and flagrant disregard for the Rules of Appellate Procedure. Such disregard constitutes a failure to comply with the standards imposed on the legal profession under the Rules of Professional Conduct. "A lawyer's conduct should conform to the requirements of the law . . . in professional service to clients[.] . . . [I]t is . . . a lawyer's duty to uphold legal process." Rule 16-Preamble NMRA. We conclude that Salazar's failure to conform his conduct to the requirements of Rules 12-201 and 12-208 was a violation of Rules 16-101, 16-103, 16-302, and 16-804(D). Accordingly, we indefinitely suspended Salazar from the practice of law for one year pursuant to Rule 17-206(A)(3) NMRA and imposed certain conditions on his reinstatement. As we explain, Salazar's failure to comply with the Rules Governing Discipline and his failure to comply with certain conditions we imposed relating to his initial suspension warranted an extension of his period of suspension to eighteen months.

### 1.     Competence and diligence

**{22}** Lawyers are bound by the Rules of Professional Conduct to act with competence and diligence in the representation of their clients. *See* Rules 16-101, 16-103. "Competent representation requires the legal knowledge, skill, thoroughness, and preparation reasonably necessary for the representation." Rule 16-101. A diligent attorney is one who "act[s] with reasonable diligence and promptness in presenting a client." Rule 16-103. Diligence in legal practice is crucial as "[p]erhaps no professional shortcoming is more widely resented than procrastination." Rule 16-103 Comm. commentary note [3]. Not only may a client grow frustrated at a lack of diligence, "unreasonable delay" may also adversely affect a client's interests, "cause a client needless anxiety[,] and undermine confidence in the lawyer's trustworthiness." *Id.*

**{23}** Client frustration resulting from a failure to comply with Rules 16-101 and 16-103 is on full display in this case. It was Nowicki's exasperation with Salazar's failure to file the notice of appeal and docketing statement that led him to complain to the Board, which in turn led disciplinary counsel to investigate Salazar's representation of both Nowicki and Godkin. Though Nowicki later wrote that he consented to the delay in filing his notice of appeal, this does not excuse Salazar's blatant failure to comply with required appellate deadlines in the first place.

**{24}** Nor is Salazar's conduct excused by his misreading of the Court of Appeals' holding in *Duran*. In *Duran*, the Court held that "an attorney who fails to do anything within the time allowed for appeal can be said to have neglected his duty and a conclusive presumption of ineffective assistance arises." 1986-NMCA-125, ¶ 4. Because the defendant in *Duran* was afforded ineffective assistance of counsel when her attorney failed to comply with the deadline to file a notice of appeal, the Court of Appeals permitted the late filing of the notice and reached the merits of the defendant's appeal. *See id.* ¶¶ 1, 6.

**{25}** We agree with the Board's conclusion in this case that "[t]he *Duran* holding that a criminal defendant's untimely appeal may proceed notwithstanding his attorney's negligence and lack of diligence does not excuse the violation of Rule[s] 16-101 and 16-103." *Duran* is a case focused on criminal defendants' rights to appellate due process. *See id.* ¶ 3. It is not to be read as providing an opportunity for criminal defense attorneys to ignore the deadlines set forth in the Rules of Appellate Procedure. We will not condone Salazar's legal scheming to thwart the appellate deadlines at the expense of his clients' due process rights. Nowicki has a constitutional right to a direct appeal of his conviction to this Court. *See* N.M. Const. art. VI, § 2. Salazar's lack of competence and diligence left his client in legal limbo, anxiously wondering for nearly three years whether he would ever have the opportunity to be heard on appeal. Such flagrant refusal to comply with the Rules of Appellate Procedure will not be tolerated in our criminal justice system.

**{26}** While not as egregious as the delay in Nowicki's case, Salazar's failure to promptly initiate Godkin's appeal also demonstrates a lack of reasonable competence and diligence. Salazar waited seven months before filing the notice of appeal in Godkin's case. Once again, this delay evidences some chicanery on Salazar's part. He testified before the hearing committee that he "could have filed the notice of appeal, and just painted by the numbers, but then [he] would have lost that [one] percent, maybe even half-percent chance that a new judge would see [the motion for new trial] favorably." We emphasize that "painting by the numbers"—or as we see it, following the rules—is precisely what Salazar must do as an attorney. His conduct should "conform to the requirements of the law[.]" Rule 16-Preamble NMRA. That includes the requirement that he file a notice of appeal within thirty days of his client's sentencing. *See* Rule 12-201(A)(1)(b). This "painting by the numbers" also includes the requirement that he file a docketing statement that meets the standards explicated in Rule 12-208(D).

**{27}** Salazar's practice of copying, wholesale, previous pleadings and presenting them as new documents meant to serve a new purpose further demonstrates his lack of competence. The Court of Appeals raised this incompetence to Salazar on several occasions where it noted the docketing statement's similarity to the motions for new trial and the fact that the docketing statement did not provide sufficient information for the Court of Appeals to consider Godkin's claims of error. A docketing statement serves a different purpose than a motion for new trial and the drafting of a docketing statement is governed by a wholly separate rule. *See* Rule 12-208(D). A docketing statement is meant to alert the appellate court to the issues before it on appeal and how those issues

were preserved at trial. *See id.* The docketing statement in Godkin's case did not meet these purposes. Even when he was given a second chance to file an amended docketing statement, Salazar failed to sufficiently provide those facts necessary for the Court of Appeals to properly review whether Godkin received a fair trial. His failure to draft an appropriate docketing statement establishes Salazar's lack of competence in representing Godkin. Because he failed to act competently and diligently in his representation of both Nowicki and Godkin on appeal, we conclude that Salazar violated Rules 16-101 and 16-103.

## 2. Expediting litigation

**{28}** Rule 16-302 states that attorneys "shall make reasonable efforts to expedite litigation consistent with the interests of the client." This rule prohibits attorneys from engaging in "[d]ilatory practices [that] bring the administration of justice into disrepute." Rule 16-302 Comm. commentary. In determining whether an attorney has failed to expedite litigation, "[t]he question is whether a competent lawyer acting in good faith would regard the course of action as having some substantial purpose other than delay." *Id.*

**{29}** Salazar's explanation for the delay in Nowicki's appeal was not professionally reasonable. He stated to the hearing committee and this Court that he did not file the notice of appeal because, had he done so, the case would have been transferred to LOPD appellate counsel, thereby preventing him from continuing to work on the case under his LOPD contract. Randy Chavez, the director of contract counsel legal services for LOPD, confirmed to the hearing committee that LOPD protocol dictates that trial counsel's job is complete once trial counsel files the notice of appeal and docketing statement in a case. He further explained that after the LOPD appellate division takes over a case, trial counsel can "help out" the appellate attorney, but trial counsel is "no longer . . . the attorney of record[.]"

**{30}** Salazar argued that he did not file the necessary appellate pleadings because he needed to be Nowicki's attorney in order to monitor exculpatory evidence that was brought to his attention approximately six months after trial and which could be used in Nowicki's petition for writ of habeas corpus. However, Salazar also correctly testified before the hearing committee that a habeas corpus petition could not be filed before the exhaustion of Nowicki's direct appeal. *See State v. Sisk,* 1968-NMSC-087, ¶ 4, 79 N.M. 167, 441 P.2d 207. The desire to work on a petition for writ of habeas corpus may at some level conflict with the notion that a direct appeal must be completed before a petition for writ of habeas corpus can be filed. Nonetheless, these conflicting notions do not provide justification for Salazar to wait nearly three years to file Nowicki's notice of direct appeal. Salazar was obligated to file the notice of appeal and docketing statement within the deadlines imposed by Rules 12-201 and 12-208. Then, he should have notified the appropriate division of LOPD of the existence of exculpatory evidence that may support a claim under habeas proceedings. Instead, Salazar's dilatory strategy left Nowicki in a legal lurch for years after his conviction, a consequence we will not condone.

**{31}**   Moreover, the appearance of exculpatory evidence six months after the trial should have led Salazar to file a motion for new trial on the grounds of newly discovered evidence. *See* Rule 5-614(C) NMRA. Nevertheless, Salazar did not file a motion for new trial within the two-year limit of Rule 5-614(C). When asked at oral argument why he did not pursue a new trial once he learned of exculpatory evidence, Salazar responded, "Quite frankly because it didn't occur to me." Salazar's lack of understanding of post-trial procedure effectually impeded his client from obtaining the full legal protections to which he was entitled under the criminal justice system. Nowicki was denied the chance to pursue a new trial. He did not receive a timely review of his conviction on appeal. If exculpatory evidence does in fact exist in his case, no court has had the opportunity to consider it. And the impetus for all this is Salazar's blatant refusal to comply with the court rules enacted to facilitate and protect every person's constitutional rights. We therefore conclude that Salazar violated Rule 16-302.

### 3.       Conduct prejudicial to the administration of justice

**{32}**   Attorney misconduct includes "engag[ing] in conduct that is prejudicial to the administration of justice[.]" Rule 16-804(D). "Lawyers are subject to discipline when they violate or attempt to violate the Rules of Professional Conduct[.]" Rule 16-804 Comm. commentary note [1]. Salazar's incompetence and lack of diligence in failing to expeditiously advance his clients' appeals violated Rules 16-101, 16-103, and 16-302. For the reasons stated above, Salazar's delays in filing appropriate appellate pleadings prevented his clients from accessing justice and fair process. Such misconduct also impedes the administration of justice in violation of Rule 16-804(D) and therefore must be addressed by imposing appropriate discipline.

### B.       Discipline

**{33}**   On November 8, 2018, the Board recommended to this Court that Salazar receive a one-year deferred suspension, during which time Salazar would be supervised in all appellate work. We rejected the Board's recommendation to defer the suspension and indefinitely suspended Salazar from the practice of law for a period of time of no less than one year, effective thirty days from November 9, 2018. In our view, Salazar's pattern and practice of intentionally ignoring the Rules of Appellate Procedure constitutes serious professional misconduct that must be stopped.

**{34}**   In imposing discipline, we are guided by the American Bar Association's Standards for Imposing Lawyer Sanctions (ABA Standards). *In re Key*, 2005-NMSC-014, ¶ 5, 137 N.M. 517, 113 P.3d 340 (per curiam) (explaining that we look to these standards to "insure a certain degree of consistency" but noting that "each case is decided on the basis of its own merits"). The ABA Standards express that suspension is appropriate when an attorney "knowingly fails to perform services for a client and causes injury or potential injury to a client[.]" Am. Bar Ass'n, *Annotated Standards for Imposing Lawyer Sanctions* (*ABA Annotated Standards*), Standard 4.42 (2015). Suspension is also recommended under the ABA Standards when an attorney has been repeatedly "reprimanded for the same or similar misconduct and engages in further

similar acts of misconduct that cause injury or potential injury to a client, the public, the legal system, or the profession." Am. Bar Ass'n, *ABA Annotated Standards*, Standard 8.2.

**{35}** Salazar's misconduct aligns with these guidelines for imposing discipline. Salazar intentionally failed to file Nowicki's notice of appeal, thereby usurping his client's right to appellate review of his conviction. Furthermore, Salazar has a history of filing untimely and unsatisfactory appellate pleadings on behalf of his clients, including Godkin's notice of appeal and docketing statement, for which he has previously been reprimanded by the Board and warned of by the Court of Appeals. For these reasons, we conclude an indefinite full suspension is justified.

**{36}** In our initial ruling, we ordered Salazar to comply with Rule 17-212 NMRA, the rule governing suspended attorneys. Under Rule 17-212, a suspended attorney is required to give notice of his or her suspension to each client, each opposing attorney in all pending cases, and each court or administrative agency overseeing a pending matter. Rule 17-212(A)-(B). The form of notification must be approved by disciplinary counsel. Rule 17-212(A). A suspended attorney must also file in this Court and serve upon disciplinary counsel an affidavit stating that he has "fully complied with the provisions of the order and with [Rule 17-212]" within ten days after the effective date of the suspension order. Rule 17-212(D). This Court may hold in contempt any attorney who fails to comply with this rule. Rule 17-212(F).

**{37}** As conditions of his reinstatement, we ordered Salazar to complete ten hours of ethics continuing legal education classes (with at least five hours consisting of in-person classes) and to submit to a character and fitness investigation by the board of bar examiners at his expense. Finally, we ordered Salazar to pay the costs of this proceeding.

**{38}** On November 30, 2018, disciplinary counsel filed a motion for an order to show cause resulting from Salazar's failure to comply with Rule 17-212 as well as his entry in a pending criminal case notwithstanding this Court's order of suspension. We granted the motion and heard argument on December 19, 2018.

**{39}** The afternoon before the hearing to show cause, Salazar filed a motion to continue the hearing based on the unavailability of his newly-acquired attorney, John McCall. We denied the motion to continue. On the morning of December 19, 2018, Debra S. Doll entered her appearance on behalf of Salazar as substitute counsel for Mr. McCall, the attorney of record. In oral argument, Ms. Doll asserted that Salazar entered his appearance in a new case—despite the fact that he was suspended—at the urging of the district court judge hearing the case. She also admitted that Salazar was not in compliance with Rule 17-212 and asked this Court for an extension of time to fulfill the requirements of the rule. She explained that her client had sought and received disciplinary counsel's approval of his suspension notification letters that very day. She personally assured the Court that she would ensure that Salazar met the requirements of Rule 17-212 by the extended deadline.

**{40}** We consider the argument pinning Salazar's disobedience of our order on a judicial officer to be quite dubious and unsupported by evidence. We also note that Salazar's required affidavit of compliance under Rule 17-212(D) was due to this Court several weeks before the hearing to show cause. Yet, Salazar had not even sought disciplinary counsel's approval of his notification letters prior to the day of the hearing on the order to show cause. Not only did Salazar miss the deadline to prove his compliance to this Court, he had not yet begun to formally notify his clients of his suspension more than a month after our order.

**{41}** As a result of his noncompliance with both our initial suspension order and Rule 17-212, we held Salazar in contempt of court and increased the period of his suspension by six months for a total indefinite suspension period of no less than eighteen months. This extension of discipline rests on Salazar's intentional act of disobedience in entering his appearance on behalf of a client following our order suspending him from the practice of law, as well as his continued habit of ignoring rules of this Court. *See* Am. Bar Ass'n, *ABA Annotated Standards*, Standard 9.22 (listing as aggravating factors the "bad faith obstruction of the disciplinary proceeding by intentionally failing to comply with rules or orders of the disciplinary agency" and "a pattern of misconduct"); *see also* Am. Bar Ass'n, *ABA Annotated Standards*, Standard 9.21 (defining "aggravating circumstances" as "any considerations or factors that may justify an increase in the degree of discipline to be imposed").

**{42}** On the personal assurances of his attorney, we afforded Salazar two days from the date of the contempt order to "comply with all requirements of Rule 17-212" and "deliver to the Office of Disciplinary Counsel . . . a separate list setting forth the names of [Salazar's] clients and the case numbers for any cases of those clients that are pending in any court[.]" Though Ms. Doll gave her word that these requirements would be met, it was ultimately Salazar's responsibility to comply with our order. Failure to complete these requirements would result in Salazar's disbarment. To aid us in ensuring that Salazar complied with our order and Rule 17-212, we ordered disciplinary counsel to file an affidavit with this Court detailing whether Salazar had come into full compliance.

**{43}** On January 2, 2019, disciplinary counsel filed an affidavit stating that Salazar had not provided a separate list of clients and had not fully met the requirements of Rule 17-212 by the deadline set forth in our December 19, 2018 order. Specifically, Salazar had failed to include in his affidavit of compliance copies of the letter he sent to his clients informing them of his suspension. He also failed to include copies of letters notifying each individual opposing counsel in his pending cases that he was suspended. Instead, Salazar sent letters only to the district attorneys in the First, Second, and Thirteenth Judicial Districts. Those letters failed to "state the place of residence of [each] client" as required by Rule 17-212(B). We seriously considered disbarring Salazar due to his ongoing defiance and lack of compliance to the terms of our December 19, 2018 order. However, two weeks later, disciplinary counsel filed a supplemental notice with this Court stating that Salazar had fully complied with Rule 17-212 and our November 9, 2018 order.

**{44}** Two days before disciplinary counsel's supplemental notice, Salazar filed a pleading asking to set aside and reconsider the December 19, 2018 order and decision of this Court. In that pleading, Salazar once again held himself out as a lawyer—a blatant violation of this Court's order of November 9, 2018. He requested this Court, "by and through his attorney of record, The Law Office of Daniel M. Salazar ESQ., (Daniel M. Salazar, Esq.)," to reconsider our suspension order as he considered it "contrary to common sense and law." Salazar argued that his successful trial record and "perceived excellence in other areas" should serve to mitigate the extent of his discipline. A lawyer's self-proclaimed excellence is not a mitigating factor we consider when dispensing appropriate discipline for flagrant violations of the Rules of Appellate Procedure, the Rules of Professional Conduct, the Rules Governing Discipline, and perhaps most importantly, this Court's order imposing discipline.

**{45}** We strike Salazar's motion as it was not filed by his counsel of record, but by "The Law Office of Daniel M. Salazar, ESQ." We are deeply troubled that Salazar continues to represent himself as an attorney of record in any case, let alone his own disciplinary matter, at a time when he is indefinitely suspended from the practice of law in New Mexico. We affirm Salazar's indefinite suspension for a period of no less than eighteen months from the effective date of his suspension as set forth in our November 9, 2018 order.

**{46}** Rules matter. An attorney must conform his or her conduct to the requirements of the rules and orders of this Court. The discipline we impose may salvage Salazar's potential and ability to practice law. This period of suspension will enable Salazar to reform his dilatory ways and accept responsibility for the harm he has inflicted on his clients and the fair administration of justice in New Mexico.

## IV. CONCLUSION

**{47}** We adopt the Board's findings of fact and conclusions of law as modified in our November 9, 2018 order and in this opinion. We indefinitely suspend Salazar from the practice of law for a period of no less than eighteen months. His reinstatement is conditioned upon his compliance with the requirements set forth in our November 9, 2018 order and in this opinion. We order him to pay the costs of this proceeding as provided in our November 9, 2018 order.

**{48} IT IS SO ORDERED.**

**BARBARA J. VIGIL, Justice**

**WE CONCUR:**

**JUDITH K. NAKAMURA, Chief Justice**

**PETRA JIMENEZ MAES, Justice, Retired**
**Sitting by designation**

**CHARLES W. DANIELS, Justice, Retired**
**Sitting by designation**

**GARY L. CLINGMAN, Justice, Retired**
**Sitting by designation**